# IN THE UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIE GILLISPIE**, | ) | |
| | ) | |
| | ) | No. |
| Plaintiff, | ) | |
| | ) | |
| | ) | **COMPLAINT.** |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | |
| **REGIONALCARE HOSPITAL** | ) | |
| **PARTNERS, INC.;** | ) | |
| **ESSENT HEALTHCARE – WAYNESBURG,** | ) | |
| **LLC d/b/a SOUTHWEST REGIONAL** | ) | |
| **MEDICAL CENTER; ESSENT** | ) | |
| **HEALTHCARE-PENNSYLVANIA, Inc.,** | ) | |
| **ESSENT HEALTHCARE, Inc.,** | ) | |
| **ESSENT HEALTHCARE, and** | ) | |
| **SOUTHWEST REGIONAL MEDICAL** | ) | |
| **CENTER,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | **FILED ON BEHALF OF**: |
| | ) | Marie Gillispie, the Plaintiff |
| | ) | |
| | ) | **COUNSEL OF RECORD**: |
| | ) | Noah Geary, Esquire |
| | ) | Suite 225 |
| | ) | Washington Trust Building |
| | ) | Washington, Pennsylvania 15301 |
| | ) | (724) 222-3788 |
| | ) | PA I.D. # 78382 |

**JURY TRIAL DEMANDED**

1

# IN THE UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF PENNSYVANIA

| | |
|---|---|
| **MARIE GILLISPIE**, )<br>)<br>Plaintiff, )<br>) No.<br>vs. )<br>)<br>)<br>**REGIONALCARE HOSPITAL** )<br>**PARTNERS, INC.,** )<br>**ESSENT HEALTHCARE – WAYNESBURG** )<br>**LLC d/b/a SOUTHWEST REGIONAL** )<br>**MEDICAL CENTER, ESSENT** )<br>**HEALTHCARE-PENNSYLVANIA, Inc.,** )<br>**ESSENT HEALTHCARE, Inc.,** )<br>**ESSENT HEALTHCARE,  and** )<br>**SOUTHWEST REGIONAL MEDICAL** )<br>**CENTER** )<br>)<br>Defendants. ) | |

## COMPLAINT.

**AND NOW COMES** the Plaintiff Marie Gillispie, by and through her attorney Noah Geary, and files this Complaint and in support thereof, avers as follows:

1. Plaintiff Marie Gillispie is an adult individual who resides in the Western District of Pennsylvania in Greene County.

2. Defendant RegionalCare Hospital Partners, Inc. was at all times material a Delaware Corporation with a principal place of business in the state of Tennessee, licensed to do business in Pennsylvania which regularly conducted business in the Western District of Pennsylvania, including owning and operating the Southwest Regional Medical Center located in Greene County, which is located within the Western District.

3.Defendant Essent Healthcare – Waynesburg, LLC t/d/b/a Southwest Regional Medical Center was at all times material a Delaware limited liability company licensed to do business in Pennsylvania which regularly conducted business in Greene County and Allegheny County, Pennsylvania both of which are in the Western District.

4.Defendant Essent Healthcare Pennsylvania, Inc. was at all times material a Delaware Corporation licensed to do business in Pennsylvania which regularly conducted business in the Western District of Pennsylvania, including owning and operating the Southwest Regional Medical Center (hereinafter "SRMC") located in Greene County, which is located within the Western District.

5.Defendant Essent Healthcare, Inc. was at all times material a Delaware Corporation with a principal place of business in the state of Tennessee licensed to do business in Pennsylvania which regularly conducted business in the Western District of Pennsylvania, including owning and operating the Southwest Regional Medical Center located in Greene County, which is located within the Western District.

6.Defendant Essent Healthcare is a for-profit entity with a principal place of business located at 3100 West End Avenue Suite 900, Nashville, Tennessee 37203.

7.Defendant Southwest Regional Medical Center is a for-profit Hospital located at 350 Bonar Avenue, Waynesburg, PA 15370.

8.At all times material, Cynthia Cowie was the CEO of SRMC and was acting on behalf of the Defendants as their employee, agent and servant, and therefore, under the doctrine of respondeat superior and/or agency principles, the Defendants are liable for her actions and conduct.

## JURISDICTION AND VENUE.

9.      This Court has original jurisdiction over the Emergency Medical Treatment and Active Labor Act ("EMTALA") claim at Count I pursuant to Title 28 U.S.C.S. Section 1331 in that it raises a federal question.

10.     The Court also has original jurisdiction over Counts II-V pursuant to Title 28 U.S.C.S. Section 1332 because diversity of citizenship exists between the parties; specifically, the Defendants are incorporated in the State of Delaware and have principal places of business in the state of Tennessee while the Plaintiff is a citizen of the Commonwealth of Pennsylvania. The Plaintiff is also seeking in excess of $75,000.00 in money damages.

10.     The Court also has supplemental jurisdiction over the claims at Counts II-V pursuant to Title 28 U.S.C. Section 1367.

11.     Venue is proper in this District pursuant to Title 28 U.S.C. § 1391 because the Defendant's unlawful, discriminatory acts giving rise to the claims stated herein occurred in the Western District.

## COUNT I.
## THE PLAINTIFF VS. ALL DEFENDANTS.
## UNLAWFUL RETALIATORY FIRING IN VIOLATION OF THE EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT, ("EMTALA"), Title 42 U.S.C.S. Section 1395dd).

12.     The foregoing paragraphs are incorporated by reference as though set forth fully.

13.     The Plaintiff, Marie Gillispie, worked for the Defendants for 13 years in various positions at the Southwest Regional Medical Center located at 350 Bonar Avenue, Waynesburg, Greene County, Pennsylvania. She was a good employee who loved her job.

14.     From approximately January of 2011 to September 3, 2012, the Plaintiff held the position of Director of Acute Care Services.

15.     From approximately September 4, 2012 to approximately November 1, 2012, Gillispie held the position of Quality Project Coordinator.

16.     The Emergency Medical Treatment and Active Labor Act ("EMTALA") is a Federal law which governs when and how a patient may be refused treatment or transferred from one hospital to another when he/she is in an unstable medical condition.

17.     In approximately October of 2012, a pregnant female presented herself to the Emergency Room Department of Southwest Regional Medical Center

18.     Emergency Room personnel examined the pregnant female.

19.     The Emergency Room personnel then referred the woman to Uniontown Hospital in Fayette County.

20.     However, the Emergency Room personnel failed to contact a physician at Uniontown Hospital to accept the patient, failed to contact and give a verbal report to a nurse at Uniontown Hospital and failed to arrange transportation for the patient to Uniontown Hospital.

21.     These failures were in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA").

22.     On or about October 24, 2012, a meeting was held regarding this EMTALA violation.

23.     Present at the meeting were CEO Cynthia Cowie, the Plaintiff and others.

24.     During this meeting, the Plaintiff stated to Cowie that it was the Defendants' duty to report this EMTALA violation to the Pennsylvania Department of Health and to the Pennsylvania Patient Safety Authority.

25.     Cowie replied that no reports were to be made.

26. Plaintiff insisted that the Defendants report the violation to the Department of Health and the Patient Safety Authority.

27. Notably, Southwest Regional Hospital had recently been investigated for committing two other EMTALA violations.

28. Cowie stated that because the Hospital had recently been the subject of two other EMTALA investigations, no one was to report the violation because the Department of Health would "be on us like flies on shit".

29. After the meeting, the Plaintiff approached her superior, Pam Carroll, and stated that she could not believe that Cowie was not going to report the violation or permit any other employees to report the violation.

30. The next day, on October 25, 2013, another meeting was convened regarding the violation, at which time Plaintiff again reiterated that it was imperative that the Hospital report the violation.

31. Cowie responded by saying: "We can't report this. We just got a letter [regarding the most recent of the two investigations]…it's clear-cut that we are not going to report this."

32. The next day, October 26, 2012, CEO Cynthia Cowie directed the Plaintiff to leave the premises.

33. On November 1, 2012, CEO Cowie fired the Plaintiff.

34. The Plaintiff was fired because she insisted that the EMTALA violation be reported to the Department of Health and to the Patient Safety Authority.

35. The Defendants' firing of the Plaintiff was in violation of EMTALA because it constituted an adverse action taken against the Plaintiff because she reported the EMTALA violation and insisted that the Defendants comply with the law and report the violation.

36. As a direct and proximate result of the Plaintiff's unlawful firing, the Plaintiff has sustained damages, including but not limited to loss of back pay and future pay, loss of back benefits and future benefits, emotional distress, humiliation, inconvenience, loss of professional opportunities, loss of personal and professional reputation, loss of earnings capacity, loss of community standing, and other financial losses.

37. The retaliatory firing was also outrageous, done willfully and wantonly, and was done with reckless disregard for the Plaintiff's federally-protected rights under EMTALA; the Plaintiff was fired by the Defendants for insisting that they comply with the law.

38. Accordingly, the Plaintiff demands punitive damages.

**WHEREFORE**, the Plaintiff requests a trial by jury, compensatory damages, punitive damages, interest, attorney fees, and any other relief to which she may be entitled, whether legal or equitable.

**COUNT II.   THE PLAINTIFF VS. ALL DEFENDANTS:
VIOLATION OF THE PUBLIC POLICY EXCEPTION TO THE PENNSYLVANIA AT-WILL EMPLOYMENT DOCTRINE.**

39. The foregoing paragraphs are incorporated by reference as though set forth fully.

40. The unlawful firing of the Plaintiff described in Count I was also violative of Pennsylvania's clearly-established Public Policy Exception to the At-Will employment doctrine.

41. The firing violated, undermined and implicated  clearly-established public policy, specifically, that enunciated in the EMTALA statute at **Title 42 U.S.C. Section 1395dd(i), Whistleblower protections**, which explicitly states that the Defendants may not penalize or take adverse action against any hospital employee because the employee reports a violation of this EMTALA.

42. Another source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff are the Standards of Nursing Conduct promulgated by the Pennsylvania Board of Nursing, specifically Section 21.18(a)(3), which states:

> "A registered nurse shall…act to safeguard the patient from the incompetent, abusive or illegal practice of any individual".

43. Reporting the EMTALA violation would have safeguarded future patients from such illegal practices of the Defendants by deterring Cowie and other employees of the Defendants from concealing EMTALA violations. It also would have encouraged compliance with EMTALA by Hospital staff.

44. Section 21.18(b)(1) of the Standards of Nursing was also violated. This section states:

> "A registered nurse may not…knowingly aid, abet or assist another person to violate or circumvent a law or Board regulation."

45. The Plaintiff refused to be complicit in violating EMTALA, and in return, was fired. This clearly violated the public policies enunciated in the Pennsylvania Standards of Nursing.

46. Another source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff is that embodied in Title 71 P.S.A. Section 1409, **Fine and penalty for violations of orders**, which makes it a summary offense, a crime, to violate any order or regulation of the Department of Health or to resist or interfere with any officer or agent thereof in the performance of his/her duties.

47. Reporting the EMTALA violation would be consistent with Pennsylvania Department of Health Regulations, and concealing the violation could have been a crime under this statute.

48. Another source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff is that embodied in Title 40 Section 1303.308 of the Pennsylvania M Care Act, which explicitly states that the Defendants shall not retaliate against

the Plaintiff, a health care worker, for reporting a serious event or incident, which the Plaintiff did.

49. As a direct and proximate result of the Plaintiff's firing, which fits squarely into the Public Policy Exception to Pennsylvania's At-Will Employment Doctrine, the Plaintiff has sustained damages, including but not limited to loss of back pay and future pay, loss of back benefits and future benefits, emotional distress, humiliation, inconvenience, loss of professional opportunities, loss of personal and professional reputation, loss of earnings capacity, loss of community standing, and other financial losses.

50. The retaliatory firing was also outrageous, done willfully and wantonly, and was done with reckless disregard for the Plaintiff's federally-protected rights under EMTALA.

51. Accordingly, the Plaintiff demands punitive damages.

**WHEREFORE**, the Plaintiff requests a trial by jury, compensatory damages, punitive damages, interest, attorney fees, and any other relief to which she may be entitled, whether legal or equitable.

### COUNT III.   THE PLAINTIFF VS. ALL DEFENDANTS: VIOLATION OF THE PUBLIC POLICY EXCEPTION TO THE PENNSYLVANIA AT-WILL EMPLOYMENT DOCTRINE.

52. The foregoing paragraphs are incorporated by reference as though set forth fully.

53. On or about October 22, 2012, Cowie tasked the Plaintiff to investigate the death of an ICU patient with the initials of G. M..

54. Plaintiff was directed to review the chart, interview the staff who cared for this patient at the time of his death and report back to Cowie with Plaintiff's findings.

55. Plaintiff did as instructed.

56. Plaintiff's investigation revealed that the nursing staff and the respiratory therapist had failed in their duty to provide competent medical care to this patient; in fact, their care was grossly negligent.

57. It is/was the Plaintiff's belief that G.M.'s death was unnecessary and likely preventable.

58. On or about October 23, 2012, the Plaintiff, upon reporting her findings to Cowie, accordingly asked Cowie if Plaintiff was to submit this incident to the Patient Care Authority.

59. Cowie instructed that no report was to be made to the Patient Care Authority.

60. The Plaintiff protested, and told Cowie that the Defendants were obligated to report this incident in a timely manner to the Pennsylvania Department of Health and the Patient Safety Authority.

61. Cowie stated that the state had been at the Hospital a little over a month prior and that the Hospital could not afford another investigation.

62. Cowie reiterated to the Plaintiff that no report was to be made.

63. Plaintiff inquired of Cowie about writing a letter to the family, explaining the circumstances of the patient's care and death.

64. Cowie informed the Plaintiff that no letter was to be written to the family either.

65. Plaintiff then went to Taryn Hughes, the Lead Respiratory Therapist at the Hospital and Darla Bricker, the Patient Care Manager, and communicated that the Hospital was obligated to report this and notify the family, but that Cynthia Cowie would not permit this.

66. The Plaintiff next went to her superior, Pam Carroll, and emphasized that this must be reported and that the family was entitled to be notified.

67. On October 26, 2012, CEO Cynthia Cowie directed the Plaintiff to leave the premises.

68. On November 1, 2012, CEO Cowie fired the Plaintiff.

69. The Plaintiff was fired because she insisted that the Defendants comply with the law, that the negligent care of patient G.M. be reported to the Department of Health, the Patient Safety Authority and to the patient's family, and because she protested the concealment of the incident.

70. The Defendants' firing of the Plaintiff accordingly was done in violation of Pennsylvania's Public Policy Exception to the at-will employment doctrine.

71. The source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff was the Standards of Nursing Conduct promulgated by the Pennsylvania Board of Nursing, specifically Section 21.18(a)(3), which states:

> "A registered nurse shall…act to safeguard the patient from the incompetent, abusive or illegal practice of any individual".

72. Reporting the negligent care would have safeguarded future patients from such illegal practices of the Defendants by deterring Cowie and other employees of the Defendants from concealing such negligent care from the Department of Health, the Patient Safety Authority and from patients' families.

73. Section 21.18(b)(1) was also violated. It states:

> "A registered nurse may not…knowingly aid, abet or assist another person to violate or circumvent a law or Board regulation."

74. The Plaintiff refused to be complicit in concealing the negligent care and in not reporting the incident, and in return, was fired by the Defendants.

75. Another source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff is that embodied in Title 71 P.S.A. Section 1409, **Fine and penalty for violations of orders**, which makes it a summary offense, a crime, to

violate any order or regulation of the Department of Health or to resist or interfere with any officer or agent thereof in the performance of his/her duties.

75. Reporting the negligent care would be consistent with Pennsylvania Department of Health Regulations, and concealing the violation could have been a crime.

76. Another source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff is that embodied in Title 40 Section 1303.308 of the Pennsylvania M Care Act, which explicitly states that the Defendants shall not retaliate against the Plaintiff, a health care worker, for reporting a serious event or incident, which the Plaintiff did.

77. As a direct and proximate result of the Plaintiff's firing which squarely fits into the Public Policy Exception to Pennsylvania's At-Will Employment Doctrine, the Plaintiff has sustained damages, including but not limited to loss of back pay and future pay, loss of back benefits and future benefits, emotional distress, humiliation, inconvenience, loss of professional opportunities, loss of personal and professional reputation, loss of earnings capacity, loss of community standing, and other financial losses.

78. The firing was also outrageous, was done willfully and wantonly, and was done with reckless disregard for the Plaintiff's rights.

79. Accordingly, the Plaintiff demands punitive damages.

**WHEREFORE**, the Plaintiff requests a trial by jury, compensatory damages, punitive damages, interest, attorney fees, and any other relief to which she may be entitled, whether legal or equitable.

## COUNT IV.   THE PLAINTIFF VS. ALL DEFENDANTS:
## VIOLATION OF THE PUBLIC POLICY EXCEPTION TO THE PENNSYLVANIA AT-WILL EMPLOYMENT DOCTRINE.

80. The foregoing paragraphs are incorporated by reference as though set forth fully.

81. In this same time period, the Plaintiff learned that a female patient, with the initials M.E., had walked into the Emergency Room of the Hospital presenting with abdominal pain and was determined to have a perforated bowel with resulting peritonitis infection who needed operated on immediately.

82. The patient was transferred to the ICU and was not operated on until the next day.

83. After the surgery, she was transferred back to the ICU.

84. She was by then ventilator dependent and had a large horizontal abdominal incision with multiple staples.

85. After several days in the Defendants' Hospital, she was transferred to Life Care Hospital in Allegheny County which accommodates long-term acute care patients.

86. Shortly after M.E.'s admission at Life Care Hospital, a physician who possessed privileges at both SWRC and Life Care brought to the Defendants' Hospital photographs which depicted large decubitus ulcers on this patient's buttocks, necrotic areas on a finger and above and around her lip, and her abdominal incision which was not healing.

87. The photographs were taken by nurses of Life Care upon M.E.'s admission there.

88. The ulcers and necrosis were developed at SRMC while patient M.E. was under the Defendants' care.

89. Plaintiff felt that a complete investigation into the care rendered to this patient was imperative, and emphasized this to Cowie.

90. Cowie replied that there would be no investigation; she stated that this would be a "million dollar lawsuit" if the patient's family were to find this out. Cowie further directed the Plaintiff not to tell Darla Bricker, the Patient Care Manager, anything further about the incident.

91. Plaintiff protested the concealment and Cowie's refusal to order an investigation and to report this to the Department of Health and the Patient Safety Authority.

92. On October 26, 2012, CEO Cynthia Cowie directed the Plaintiff to leave the premises.

93. On November 1, 2012, CEO Cowie fired the Plaintiff.

94. The Plaintiff was fired because she insisted that the poor care rendered to patient M.E. be reported to the Department of Health and the Patient Safety Authority – which was what the Hospital was required to do by law - and because she refused to be complicit in the concealment of this from the patient's family.

95. The Defendants' firing of the Plaintiff was therefore done in violation of Pennsylvania's Public Policy Exception to the at-will employment doctrine.

96. The source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff are the Standards of Nursing Conduct promulgated by the Pennsylvania Board of Nursing, specifically Section 21.18(a)(3), which states:

> "A registered nurse shall…act to safeguard the patient from the incompetent, abusive or illegal practice of any individual".

97. Reporting the negligent care would have safeguarded future patients from such illegal practices of the Defendants by deterring Cowie and other employees of the Defendants from concealing such negligent care from the Department of Health, the Patient Safety Authority and from patients' families.

98.     Section 21.18(b)(1) of the Nursing Standards of Conduct was also violated. This section states:

> "A registered nurse may not…knowingly aid, abet or assist another person to violate or circumvent a law or Board regulation."

99.     The Plaintiff refused to be complicit in violating the law, and in return, was fired by the Defendants.

100.    Another source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff is that embodied in Title 71 P.S.A. Section 1409, **Fine and penalty for violations of orders**, which makes it a summary offense, a crime, to violate any order or regulation of the Department of Health or to resist or interfere with any officer or agent thereof in the performance of his/her duties.

101.    Reporting the negligent care would be consistent with Pennsylvania Department of Health Regulations, and concealing the violation could have been a crime.

102.    Another source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff is that embodied in Title 40 Section 1303.308 of the Pennsylvania M Care Act, which explicitly states that the Defendants shall not retaliate against the Plaintiff, a health care worker, for reporting a serious event or incident, which the Plaintiff did.

103.    As a direct and proximate result of the Plaintiff's unlawful firing, the Plaintiff has sustained damages, including but not limited to loss of back pay and future pay, loss of back benefits and future benefits, emotional distress, humiliation, inconvenience, loss of professional opportunities, loss of personal and professional reputation, loss of earnings capacity, loss of community standing, and other financial losses.

104. The firing was also outrageous, done willfully and wantonly, and was done with reckless disregard for the Plaintiff's rights.

105. Accordingly, the Plaintiff demands punitive damages.

**WHEREFORE**, the Plaintiff requests a trial by jury, compensatory damages, punitive damages, interest, attorney fees, and any other relief to which she may be entitled, whether legal or equitable.

### COUNT V.    THE PLAINTIFF VS. ALL DEFENDANTS: VIOLATION OF THE PUBLIC POLICY EXCEPTION TO THE PENNSYLVANIA AT-WILL EMPLOYMENT DOCTRINE.

106. The foregoing paragraphs are incorporated by reference as though set forth fully.

107. On October 26, 2012 two investigators from the Pennsylvania Department of Health appeared at the Hospital to investigate a complaint from a male patient, initials L.S., and his son.

108. This patient and his family complained that the patient received poor care and that the nurses involved in his care were not disciplined as had been represented to them by the Hospital.

109. The Plaintiff was interviewed by a Department of Health investigator about Plaintiff's involvement in the investigation into the handling of patient L.S.'s care and what discipline, if any, was administered to the nurses responsible for L.S.'s care.

110. The Plaintiff told the truth to the Department of Health investigator.

111. Defendant's CEO, Cynthia Cowie, approached the Plaintiff immediately after learning what the Plaintiff had told the DOH investigators, and accused the Plaintiff of "throwing" co-worker Barbara Badeschter "under the bus".

112. CEO Cynthia Cowie then ordered the Plaintiff to leave the premises.

113. On November 1, 2012, CEO Cowie fired the Plaintiff.

114.   The Plaintiff was fired for telling the truth to the Department of Health investigators – which she was required by law to do.

115.   The Defendants' firing of the Plaintiff was therefore done in violation of Pennsylvania's Public Policy Exception to the at-will employment doctrine.

116.   The source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff are the Standards of Nursing Conduct promulgated by the Pennsylvania Board of Nursing, specifically Section 21.18(a)(3), which states:

> "A registered nurse shall…act to safeguard the patient from the incompetent, abusive or illegal practice of any individual".

117.   Telling the Department of Health Investigators the truth would have safeguarded future patients by deterring Cowie and other employees of the Defendants from misrepresenting to patients' families that certain disciplinary action was taken against Hospital Staff when such never occurred.

118.   Section 21.18(b)(1) was also violated. It states:

> "A registered nurse may not…knowingly aid, abet or assist another person to violate or circumvent a law or Board regulation."

119.   The Plaintiff was fired for telling the truth to the DOH investigators.

120.   Another source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff  is that embodied in Title 71 P.S.A. Section 1409, **Fine and penalty for violations of orders**, which makes it a summary offense, a crime, to violate any order or regulation of the Department of Health or to resist or interfere with any officer or agent thereof in the performance of his/her duties.

121.   Lying to the Pennsylvania Department of Health Investigators would have been a crime under this statute; thus, the Defendants fired the Plaintiff for refusing to commit a crime.

122. Another source of public policy which was violated, undermined and implicated by the Defendants' unlawful firing of the Plaintiff is that embodied in Title 40 Section 1303.308 of the Pennsylvania M Care Act, which explicitly states that the Defendants shall not retaliate against the Plaintiff, a health care worker, for reporting a serious event or incident, which the Plaintiff did.

123. As a direct and proximate result of the Plaintiff's unlawful firing, the Plaintiff has sustained damages, including but not limited to loss of back pay and future pay, loss of back benefits and future benefits, emotional distress, humiliation, inconvenience, loss of professional opportunities, loss of personal and professional reputation, loss of earnings capacity, loss of community standing, and other financial losses.

124. The firing was also outrageous, was done willfully and wantonly, and was done with reckless disregard for the Plaintiff's rights.

125. Accordingly, the Plaintiff demands punitive damages.

126. Significantly, the Defendants have provided numerous, clearly different reasons to the Plaintiff for her firing, which demonstrates that all of these proferred reasons were clearly pretextual, and that the true reason behind the firing was for the reasons set forth throughout this Complaint.

127. The Defendants have claimed that the reason they fired the Plaintiff was because the Plaintiff falsified a document, which never occurred.

128. The Defendants claimed that the Plaintiff was fired for not providing "complete" details to CEO Cynthia Cowie about a specific incident. This never occurred.

129. The Defendants then claimed that the Plaintiff was fired because she provided incorrect documentation to the Department of Health Investigators. This never happened either.

**WHEREFORE**, in light of all of the above, the Plaintiff requests a trial by jury, compensatory damages, punitive damages, interest, attorney fees, and any other relief to which she may be entitled, whether legal or equitable.

                        Respectfully submitted,

                        /s/ Noah Geary
                        Noah Geary, Esquire
                        Attorney for Plaintiff
                        Suite 225
                        Washington Trust Building
                        Washington, PA 15301
                        (724) 222-3788
                        PA I.D. #78382

October 18, 2013

## VERIFICATION.

I, Marie Gillispie, hereby verify that the allegations set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I make this Verification subject to 18 P.S.A. Section 4904, relating to unsworn falsification to authorities.

October 18, 2013                                              /s/ Marie Gillispie

                                                                                Marie Gillispie