IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIE GILLISPIE,<br>              Plaintiff,<br><br>   vs.<br><br><br><br>REGIONALCARE HOSPITAL<br>PARTNERS, INC.; ESSENT<br>HEALTHCARE-WAYNESBURG LLC<br>*Doing business as* SOUTHWEST<br>REGIONAL MEDICAL CENTER;<br>ESSENT<br>HEALTHCARE-PENNSYLVANIA, INC.;<br>ESSENT HEALTHCARE INC.; ESSENT<br>HEALTHCARE; SOUTWEST REGIONAL<br>MEDICAL CENTER,<br>              Defendants. | Civil Action No. 13-1534<br><br>Judge Mark R. Hornak/<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 2 |

### **REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

Pending before the Court is the Defendants' Motion to Dismiss Counts II – V of Plaintiff's Complaint, ECF No. 2. The Court has reviewed Plaintiff's Complaint, ECF No. 1, the Motion to Dismiss and accompanying Brief in Support, ECF No. 3, as well as Plaintiff's Brief in Opposition, ECF No. 9. For the following reasons, it is respectfully recommended that the Motion to Dismiss be denied.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Marie Gillespie ("Plaintiff" or "Gillespie") initiated this civil action with the filing of a five-count Complaint [ECF No. 1]. In the Complaint, Plaintiff sets forth various claims against Defendants for alleged unlawful retaliatory discharge in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA")[1] (Count I) and alleged wrongful termination in violation of various public policies (Counts II – V). Defendants have filed a Motion to Dismiss Counts II – V pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that Plaintiff's Complaint fails to allege facts upon which relief may be granted.

When considering a motion to dismiss, the Court must accept as true the factual allegations in the Complaint and draw all reasonable inferences in the plaintiff's favor. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). Therefore, for the purposes of this decision, the essential facts are as follows.

For thirteen years leading up to her termination on November 1, 2012, Gillespie was employed in various positions at the Southwest Regional Medical Center ("SWRMC") in Waynesburg, Pennsylvania. Defendant Essent Healthcare – Waynesburg is a Delaware corporation licensed to do business in the Western District of Pennsylvania and owns and

---

[1] In Byrne v. Cleveland Clinic, 519 F. App'x 739 (3d Cir. 2013), the United States Court of Appeals for the Third Circuit summarized the purpose of EMTALA, as follows:

> Congress enacted EMTALA in the mid–1980s based on concerns that, due to economic constraints, hospitals either were refusing to treat certain emergency room patients or transferring them to other institutions. EMTALA requires hospitals to provide appropriate medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner.

Byrne v. Cleveland Clinic, 519 F. App'x at 742 (internal citations omitted). Simply stated, EMTALA was passed to prevent "patient dumping," the practice of refusing to treat uninsured patients. Beller v. Health and Hosp. Corp. of Marion County, Indiana, 703 F.3d 388, 390 (7th Cir. 2012).

operates SWRMC. SWRMC also operates as a subsidiary of Defendant RegionalCare Hospital Partners, Inc. At the time of her termination, Gillespie was employed as the Quality Project Coordinator and prior to that position, she served as the Director of Acute Care Services.

In Count I through Count V of her Complaint, Gillespie alleges that she was wrongfully terminated in violation of federal statute and Pennsylvania public policy because she repeatedly voiced concerns that the care provided to four specific patients was in violation of federal and state laws and regulations. In addition, Gillespie alleges that her attempts to report the substandard patient care to appropriate state agencies, as required by applicable regulations, were thwarted by SWRMC's Chief Executive Officer, Cynthia Cowie ("Cowie"). Within days of voicing her concerns regarding the legal obligation to report these incidents, Gillespie was terminated. She alleges that her termination was retaliatory, in violation of EMTALA and Pennsylvania public policy.

In Count I of her Complaint, Gillespie sets forth a claim pursuant to the anti-retaliation provisions of EMTALA. Gillespie alleges that in October 2012, a pregnant female arrived at the SWRMC Emergency Room, was examined, and then referred to Uniontown Hospital in Fayette County. In making the referral, Gillespie alleges that SWRMC failed to contact a physician at Uniontown Hospital to accept the patient, failed to contact and give a verbal report to a nurse at Uniontown Hospital and failed to arrange transportation for the patient to Uniontown Hospital. Gillespie alleges these failures constitute violations of EMTALA. An internal meeting regarding the EMTALA violations was held with Cowie on October 24, 2012. Gillespie attended the meeting and explained the nature of the violations and the legal obligation to report the incident to the Pennsylvania Department of Health and to the Pennsylvania Patient Safety Authority. Gillespie alleges that Cowie "replied that no reports were to be made." [ECF No. 1, ¶ 25].

The following day, Gillespie complained to her supervisor Pam Carroll that Cowie was not permitting any employee to report the incident. A second meeting was convened that day, and Gillespie again "reiterated that it was imperative that the Hospital report the violation…. Cowie responded by saying: 'We can't report this. We just got a letter [regarding the most recent of two investigations] …. It's clear-cut that we are not going to report this." [ECF No. 1, ¶¶ 30-31]. Cowie directed Gillespie to leave the premises and on November 1, 2012, Gillespie was fired. Gillespie alleges her termination was retaliatory "because she reported the EMTALA violation and insisted that Defendants comply with the law."

In Count II, Gillespie alleges a common law claim for wrongful discharge. In particular, Gillespie alleges that her termination occurred in retaliation for her complaints regarding Cowie's refusal to comply with EMTALA and Pennsylvania medical regulations implicated by the care Defendants provided to the pregnant female patient. Accordingly, Gillespie claims that her termination violated clearly mandated public policies of the Commonwealth of Pennsylvania.

Gillespie sets forth an additional common-law wrongful discharge claim in Count III of the Complaint, arising out of her authorized investigation into the death of patient G.M. in the intensive care unit at SWRMC. Gillespie's investigation included a review of G.M.'s medical chart and interviews with caregivers. Based on the information obtained, Gillespie concluded that the respiratory therapist and nursing staff were grossly negligent.

Gillespie reported her findings to Cowie, and asked Cowie if her report should be submitted to the Patient Care Authority and the Pennsylvania Department of Health, as required by Pennsylvania law. Cowie stated that no report was to be made. Gillespie then asked if a letter should be prepared to advise the patient's family of the circumstances surrounding his death. Cowie informed Gillespie that no letter should be written.

Gillespie alleges that she reported the findings of her investigation to the SWRMC Lead Respiratory Therapist, to the Patient Care Manager, and to Pam Carroll. Gillespie informed each of them of the Hospital's legal obligation to report her findings to appropriate state agencies and to the patient's family. Shortly after these conversations, on October 26, 2012, Cowie directed Gillespie to leave the SWRMC premises. Gillespie alleges she was terminated on November 1, 2012, because she insisted that Defendants comply with their obligation to report the negligent care to the appropriate authorities and to the patient's family.

Gillespie sets forth a third claim for wrongful discharge in violation of public policy at Count IV of the Complaint. In particular, Gillespie alleges she became aware of a serious incident arising out of negligent care afforded to patient M.E. Patient M.E. was transferred to a hospital after developing "large decubitus ulcers" on her buttocks, "necrotic areas on a finger and above and around her lip," and an abdominal incision which was not healing properly. Gillespie informed Cowie that a complete investigation into the patient's care would be necessary. Cowie responded that no investigation would occur and that Gillespie was not to report the incident to the Patient Care Manager, so as to conceal the incident from appropriate state agencies and the patient's family. Gillespie protested Cowie's instructions. Cowie directed her to leave the premises and, subsequently, terminated Plaintiff's employment.

Count V of Gillespie's Complaint sets forth her final claim for wrongful termination in violation of Pennsylvania public policy. Gillespie alleges that on October 26, 2012, two investigators from the Pennsylvania Department of Health appeared at SWRMC to investigate a complaint from the family of patient L.S. Gillespie was interviewed by an investigator regarding her involvement in the investigation of the patient's care and the discipline, if any, administered to the involved nurses. Gillespie disclosed what she knew and subsequently was admonished by

5

Cowie for "'throwing' co-worker Barbara Badeschter 'under the bus.'" [ECF No. 1, ¶ 111]. Cowie then ordered Gillespie to leave the premises and on November 1, 2012, fired Gillespie.

Defendants have filed a Motion to Dismiss Counts II – V contending that Count II is preempted by the EMTALA whistleblower provision and that Counts III – V are preempted by the Pennsylvania Whistleblower Law.

**B.    JURISDICTION AND STANDARD OF REVIEW**

Gillespie invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331, which provides original jurisdiction for all civil actions arising under the Constitution, laws, or treaties of the United States. Gillespie alleges, *inter alia,* a claim pursuant to EMTALA's federal whistleblower protections, 42 U.S.C. § 1395dd(i). Accordingly, this Court has jurisdiction over Gillespie's action.

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state

a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

### C. DISCUSSION

Under Pennsylvania law, an employer may terminate an employee for any reason or no reason unless the parties are bound by a contract. Shick v. Shirey, 716 A.2d 1231, 1233 (Pa.1998). An exception to this broad policy exists where discharge would violate a clear mandate of public policy. As the Pennsylvania Supreme Court has explained, "where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge. Geary v. U.S. Steel Corp., 319 A.2d 174, 180 (Pa. 1974). "To state a cause of action under the public policy exception to the at-will employment doctrine, a plaintiff must point to a 'clear public policy articulated in the constitution, in legislation, an administrative regulation or a judicial decision.'" Tanay v. Encore Healthcare, LLC, 810 F. Supp.2d 734, 737 (E.D. Pa. 2011).

7

The Pennsylvania Supreme Court has emphasized that the public policy exception to the at-will employment doctrine applies "in only the narrowest of circumstances." McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287 (Pa. 2000). Application of the public policy exception to the at-will employment doctrine has been limited to situations in which an employer "(1) requires an employee to commit a crime [,] (2) prevents an employee from complying with a statutorily imposed duty [,] and (3) discharges an employee when specifically prohibited from doing so by statute." Id. at 738 (citing, *inter alia*, Spierling v. First Am. Home Health Servs., Inc., 737 A.2d 1250, 1252 (Pa. Super. 1999)).

In addition, a common law wrongful discharge claim cannot be stated where a statutory remedy is available for the alleged retaliatory discharge. Hodson v. Alpine Manor, Inc., 512 F. Supp. 2d 373, 395 (W.D. Pa. 2007) (citing Novosel v. Nationwide Insurance Co., 721 F.2d 894 (3d Cir. 1983)); and see, Preobrazhenskaya v. Mercy Hall Infirmary, 71 F. App'x 936, 941 (3d Cir. 2003)("[w]hether or not [plaintiff's] FLSA claim can succeed is irrelevant; '[i]t is the existence of the remedy, not the success of the statutory claim, which determines preemption.'")(internal citations omitted).

In this case, Defendants contend that statutory remedies exist under both EMTALA and the Pennsylvania Whistleblower Law and, therefore, Gillespie's common law claims for retaliatory termination claim are pre-empted.

### 1. Count II – EMTALA/Wrongful Discharge Claim

Count II of Gillespie's Complaint sets forth a claim for unlawful termination in violation of Pennsylvania public policy as expressed through Pennsylvania's regulation of the nursing profession. These regulations include specific medical incident reporting requirements. In particular, Gillespie alleges that by refusing to permit her to report the EMTALA violations to

8

appropriate Pennsylvania agencies, Defendants violated the following Pennsylvania regulations and statutes:

1. Section 21.18(a)(3) of the Standards of Nursing Conduct, which states that registered nurses shall "act to safeguard the patient from the incompetent, abusive or illegal practice of any individual."

2. Section 21.18(b)(1) of the Standards of Nursing Conduct, which states that registered nurses may not "knowingly aid, abet or assist another person to violate or circumvent a law or Board regulation."

3. 71 P.S. § 1409, which makes it a summary offense, a crime, to violate any order or regulation of the Department of Health or to resist or interfere with any officer or agent thereof in the performance of his/her duties.

4. 40 P.S. § 1303.308, which states that employers shall not retaliate against individual health care workers for reporting a serious event or incident.

Defendants assert, however, that with regard to the pregnant female patient, EMTALA provides a statutory remedy for retaliation arising out of Gillespie's whistleblowing activities and, accordingly, Gillespie's common law claim for wrongful discharge must be dismissed with prejudice.

EMTALA provides protection to whistleblowers to ensure that such persons are not penalized or retaliated against for reporting violations of its terms. 42 U.S.C. § 1395dd(i). The relevant portion of the statute states:

> A participating hospital may not penalize or take adverse action against a qualified medical person described in subsection (c)(1) (A)(iii) of this section or a physician because the person or physician refuses to authorize the transfer of an individual with an emergency medical condition that has not been stabilized *or against any hospital employee because the employee reports a violation of a requirement of this section.*

42 U.S.C. § 1395dd(i) (emphasis added).

In terms of a remedy for a violation of the statute, EMTALA provides that "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a

9

requirement of [the Act] may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located…." 42 U.S.C. § 1395dd(d)(2)(A). Thus, courts are to refer to and consider the remedies available and damages recoverable under state law. See, e.g., Heimlicher v. Steele, 615 F. Supp.2d 884, 937 (N.D. Iowa 2009). Further, EMTALA expressly provides that "[t]he provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 U.S.C. § 1395dd (f). As enacted, therefore, EMATLA does not provide a remedy for Defendants' alleged retaliation in violation of its whistleblower provision but, instead, looks to state law.

The United States Court of Appeals for the Third Circuit has observed that Pennsylvania's public policy exception to at-will employment may be invoked where no statutory remedies are available. Bruffett v. Warner Communications, Inc., 692 F.2d 910, 919 (3d Cir. 1982).

> In Reuther v. Fowler & Williams, Inc., 255 Pa. Super. 28, 386 A.2d 119 (1978), the court recognized a common law action for an employee who was allegedly discharged for having taken time off to serve on jury duty. In Hunter v. Port Authority of Allegheny County, 277 Pa. Super. 4, 419 A.2d 631 (1980), the court held that allegations that an applicant was refused employment because of a pardoned conviction in violation of the state constitution stated a cause of action. In neither case was there any statutory remedy to vindicate the important public policy implicated. In Perks v. Firestone Tire & Rubber Co., 611 F.2d 1363, 1366 (3d Cir. 1979), we held an employee could sue for tortious discharge because Pennsylvania's anti-polygraph statute embodied "a recognized facet of public policy." Again, the Pennsylvania statute prohibiting such action did not create any statutory remedy.

Id.

Defendants cite Abert v. Rehabcare Croup Inc., No. 12-393, 2013 WL 1500670 (W.D. Pa. Feb. 22, 2013), for the proposition that Gillespie has a viable statutory remedy which precludes her claim for wrongful discharge in violation of public policy.

10

In Abert, plaintiff alleged she was the victim of a crime and was required to attend court to obtain a PFA order. Because of the court proceedings, plaintiff was late for work, but had notified her employer that she would be late and later disclosed the reason for her tardiness. That same day, plaintiff alleged she was terminated for exercising her right to attend court and to obtain a PFA order. The court concluded that plaintiff's factual allegations were sufficient to state a claim for the violation of the Pennsylvania Crime Victims Employment Protection Act, 18 Pa. Cons. Stat. Ann. § 4757(c). Abert v. Rehabcare Croup Inc., No. 12-393, 2013 WL 1500670 at * 21-22 (W.D. Pa. Feb. 22, 2013), *report and recommendation adopted in part, rejected in part sub nom.* Abert v. RehabCare Grp. Inc., 2013 WL 1500652 (W.D. Pa. Apr. 10, 2013). The Crime Victims Employment Protection Act provides an express statutory remedy, including "recovery of wages and benefits lost as a result of the violation and for an order requiring the reinstatement of the employee. Damages recoverable shall not exceed wages and benefits actually lost. If he prevails, the employee shall be allowed a reasonable attorney fee fixed by the court." 18 Pa. Cons. Stat. Ann. § 4957 (West). Because the Crime Victims Employment Protection Act provides a specific remedy, the court dismissed plaintiff's wrongful discharge claim, finding it preempted by the availability of a statutory remedy.

In contrast to Abert, EMTALA does not provide a statutory remedy for a violation of the act, but instead expressly looks to state law for available remedies. At this early stage of the litigation, given the allegations of Count II of the Complaint, it appears Gillespie has stated a claim that she was wrongfully discharged in violation of public policy. Because a remedy is not otherwise available, Gillespies' claim appears to fall with the public policy exception to at-will employment. Accordingly, it is respectfully recommended that the Motion to Dismiss Count II of the Complaint be denied.

## 2. Counts III, IV and V – PWL/Wrongful Discharge

Defendants also seek dismissal of Gillespie's wrongful discharge claims arising out of the incidents set forth in Counts III, IV and V of her Complaint. Defendants argue that Gillespie's claims are preempted by an existing statutory remedy provided by the Pennsylvania Medical Care Availability and Reduction of Error ("MCARE") Act, 40 P.S. § 1303.101 et. seq., which expressly incorporates the provisions of the Pennsylvania Whistleblower Law.

The MCARE Act protects health care professionals from retaliatory action for reporting "incidents" or "serious events" to the appropriate safety officer. It provides in pertinent part:

> A health care worker who reasonably believes that a serious event or incident has occurred shall report the serious event or incident according to the patient safety plan of the medical facility.... The report shall be made immediately or as soon thereafter as reasonably practicable, but in no event later than 24 hours after the occurrence or discovery of a serious event or incident.... A health care worker who reports the occurrence of a serious event or incident in accordance with subsection (a) or (b) shall not be subject to any retaliatory action for reporting the serious event or incident and shall have the protections and remedies set forth in ... the Whistleblower Law.

40 P.S. § 1303.308. An "incident" is defined as "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility which could have injured the patient but did not either cause an unanticipated injury or require the delivery of additional health care services to the patient." Id. at § 1303.302. A "serious event" is defined as "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility that results in death or compromises patient safety and results in an unanticipated injury requiring the delivery of additional health care services to the patient." Id.

Gillespie argues that the Pennsylvania Whistleblower Law does not preempt her common law claims because she was not an employee of a public entity and, alternatively, that her claims

survive under the public policy exception to at-will employment because the remedies set forth therein are inadequate.

The Court agrees that to the extent Gillespie sets forth claims that fall within the anti-retaliation provision of the MCARE Act, her common law wrongful discharge claims are preempted. First, the terms of the MCARE anti-retaliation provision expressly apply to all health care workers in the Commonwealth of Pennsylvania, regardless of the public or private identity of the employer at issue, and if applicable to Gillespie's claims at Counts III, IV and V, a statutory remedy is available. Second, to the extent the full panoply of remedies available at common law may not be available under the provisions of the Whistleblower Law, it is apparent that the Pennsylvania legislature has deemed the remedies available to be sufficient, "and it is not for this Court to say otherwise." Abert v. Rehabcare Croup Inc., No. 12-393, 2013 WL 1500670 at *30 (W.D. Pa. Feb. 22, 2013) *report and recommendation adopted in part, rejected in part sub nom*. Abert v. RehabCare Grp. Inc., 2013 WL 1500652 (W.D. Pa. Apr. 10, 2013).

However, at this stage of the litigation, it equally is unclear whether the wrongful discharge claims set forth at Counts III, IV and V are within the province of the MCARE Act anti-retaliation provisions or, if not, whether they are independently viable pursuant to the clear expressions of Pennsylvania public policy set forth in the various regulations cited in Gillespie's Complaint. See, e.g., Krapf v. St. Luke's Hosp., 4 A.3d 642, 651-52 (Pa. Super. Ct. 2010) (wrongful death action recognizing both a statutory duty pursuant to MCARE Act and a common law duty requiring hospital to disclose to the patients or their families the fact that a nurse in the course and scope of his employment was harming patients). Thus, if Gillespie's claims fall beyond the scope of the MCARE Act and a statutory remedy is unavailable, it is not implausible that a common law remains. At this early stage of the litigation, it appears prudent to permit the

13

parties to engage in discovery to determine the scope of Gillespie's claims with regard to Defendants' alleged retaliation for the conduct alleged in Counts III, IV and V. Accordingly, it is recommended that Defendants' Motion to Dismiss Gillespie's common law wrongful discharge claims alleged in Counts III, IV and V of the Complaint be denied without prejudice to renewal the summary judgment stage of the litigation.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss Counts II – V of Gillespie's Complaint [ECF No. 2] be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

          Respectfully submitted,

          /s/ Maureen P. Kelly
          MAUREEN P. KELLY
          UNITED STATES MAGISTRATE JUDGE

Dated: May 19, 2014

cc:    The Honorable Mark R. Hornak
       United States District Judge

       All counsel of record by Notice of Electronic Filing