IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIE GILLISPIE,<br>    Plaintiff,<br><br>    vs.<br><br><br><br>REGIONALCARE HOSPITAL<br>PARTNERS, INC.; ESSENT<br>HEALTHCARE-WAYNESBURG LLC<br>*doing business as* SOUTHWEST<br>REGIONAL MEDICAL CENTER;<br>ESSENT<br>HEALTHCARE-PENNSYLVANIA, INC.;<br>ESSENT HEALTHCARE INC.; ESSENT<br>HEALTHCARE; SOUTWEST REGIONAL<br>MEDICAL CENTER,<br>    Defendants. | Civil Action No. 13-1534<br><br>Judge Mark R. Hornak/<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 34 |

## REPORT AND RECOMMENDATION

I.  **RECOMMENDATION**

Pending before the Court is the Defendants' Motion to Dismiss Counts VI though IX of Plaintiff's Amended Complaint (ECF No. 34). The Court has reviewed Plaintiff's First Amended Complaint, (ECF No. 32), the Motion to Dismiss, the briefs filed in support and in opposition thereto, (ECF Nos. 35, 39 and 40), as well as Defendants' Supplemental Brief in Support of Motion to Dismiss (ECF No. 48) and Plaintiff's Response Brief in Opposition. (ECF No. 49). For the following reasons, it is respectfully recommended that the Motion to Dismiss be granted in part and denied in part.

1

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Marie Gillespie ("Plaintiff" or "Gillespie") initiated this civil action on October 22, 2013, with the filing of a five-count Complaint (ECF No. 1). In her original Complaint, Plaintiff set forth various claims against Defendants for her alleged retaliatory discharge on November 1, 2012, in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA")(Count I) and for her alleged wrongful termination in violation of various public policies (Counts II – V). Defendants filed a Motion to Dismiss Counts II – V pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 2), contending that Plaintiff's common law wrongful discharge claims were preempted by applicable federal and state statutes, including the Pennsylvania Whistleblower Law, 43 P.S. §§ 1422, *et. seq.,* and the Pennsylvania MCARE Act, 50 P.S. §§ 1303.101 *et. seq.* This Court denied the initial Motion to Dismiss, noting that EMTALA appears to contemplate the incorporation of state common law remedies into an EMTALA civil action, and discovery would be required to determine if Plaintiff's common law claims were duplicative of her statutory claims. (ECF Nos. 13, 16).

Subsequently, Plaintiff filed a Motion to Amend/Correct her Complaint (ECF No. 27), which was granted on October 15, 2014 (ECF No. 28). Plaintiff filed her First Amended Complaint on October 31, 2014, (ECF. No. 32), which purports to add four claims (Count VI through IX). In pertinent part, the Amended Complaint states that "[t]he alleged unlawful firing of Plaintiff described in Counts I-V was also violative of the anti-retaliation provisions of [the Pennsylvania Medical Care Availability and Reduction of Error (MCARE) Act ("MCARE Act")], Title 40 Section 1303.308(c)."

Defendants have filed this second Motion to Dismiss, seeking to dismiss each of the additional claims (Counts VI through IX) based upon Plaintiff's failure to timely file her MCARE Act claims. In addition, Defendants seek the dismissal of all retaliation claims, because Plaintiff's claims arise out of complaints lodged within the scope of her employment, which Defendants argue cannot constitute "protected activity."

B.    STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Public Employees' Retirement System v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must

3

allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

### C. DISCUSSION

#### 1. Statute of Limitations

Defendants contend that dismissal of Plaintiff's MCARE anti-retaliation claims (Counts VI through IX) is required because Plaintiff failed to assert her claims within the 180 day statute of limitations set forth in the Pennsylvania Whistleblower Statute, 43 P.S. § 1424(a). Plaintiff was terminated on November 1, 2012. Therefore, Defendants contend the statute of limitations ran on her whistleblower claims well before the filing of this action October 22, 2013, and certainly before the filing of her First Amended Complaint on October 31, 2014. Plaintiff responds that Defendants have invoked the wrong statute of limitations; rather, Plaintiff argues that MCARE's two year statute of limitations for medical injuries governs her whistleblower claim. (ECF No. 39, p. 4). This issue of law is readily resolved in favor of Defendants.

As explained by the Pennsylvania Supreme Court in Dep' of Envtl. Prot. v. Cumberland Coal Res., LP, 102 A.3d 962, 975 (Pa. 2014), the Pennsylvania Statutory Construction Act, 1 P.S. §§ 1501 *et seq*., expressly provides that "the objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Id., citing 1 P.S. § 1921(a).

> The best indication of the legislature's intent is the plain language of the statute. When considering statutory language, "[w]ords and phrases shall be construed

4

according to rules of grammar and according to their common and approved usage." Id. § 1903(a). Further, when the words of a statute are clear and unambiguous, there is no need to go beyond the plain meaning of the language of the statute "under the pretext of pursuing its spirit." Id. § 1921(b). Thus, only when the words of a statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c). Id. § 1921(c); see generally Bayada Nurses Inc. v. Com. Dept. Labor and Indus., 607 Pa. 527, 8 A.3d 866, 880–81 (2010).

Dep' of Envtl. Prot. v. Cumberland Coal Res., LP, 102 A.3d at 975. Because the issue of law presented by Defendants' Motion to Dismiss requires the simultaneous application of two statutes, Pennsylvania rules of statutory construction further provide that "[s]tatutes in pari materia shall be construed together, if possible, as one statute." 1 P.S. § 1932.

Chapter 3 of Pennsylvania's MCARE Act protects health care professionals from retaliatory action for reporting "incidents" or "serious events" to the appropriate safety officer, as follows:

> (a) Reporting.—A health care worker who reasonably believes that a serious event or incident has occurred shall report the serious event or incident according to the patient safety plan of the medical facility unless the health care worker knows that a report has already been made. The report shall be made immediately or as soon thereafter as reasonably practicable, but in no event later than 24 hours after the occurrence or discovery of a serious event or incident.
>
> (b) Duty to notify patient.— A medical facility through an appropriate designee shall provide written notification to a patient affected by a serious event or, with the consent of the patient, to an available family member or designee within seven days of the occurrence or discovery of a serious event. If the patient is unable to give consent, the notification shall be given to an adult member of the immediate family.
>
> (c) Liability.—A health care worker who reports the occurrence of a serious event or incident in accordance with subsection (a) or (b) shall not be subject to any retaliatory action for reporting the serious event or incident and shall have the protections and remedies set forth in the act of December 12, 1989 (P.L. 1559, No. 169), known as the Whistleblower Law.

40 P.S. § 1303.308, citing 43 P.S. § 1421 et seq. An "incident" is defined in the MCARE statute as "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility which could have injured the patient but did not either cause an unanticipated injury or require the delivery of additional health care services to the patient." Id. at § 1303.302. A "serious event" is defined as "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility that results in death or compromises patient safety and results in an unanticipated injury requiring the delivery of additional health care services to the patient." Id.

As written, Chapter 3 of the MCARE Act extends the scope of protection of the Pennsylvania Whistleblower Law, 43 P.S. § 1421 et seq., (the "Whistleblower Law") to employees of medical facilities who report an incident or serious event in accordance with MCARE provisions. In the absence of this extension, the Whistleblower Law "only covers employees of public bodies, or a body funded by a public body." Bensinger v. Univ. of Pittsburgh Med. Ctr., 98 A.3d 672, 681 (Pa. Super. Ct. 2014). While the scope of potential claimants is broadened to include reporting health care workers, the Whistleblower Law is not otherwise amended by MCARE, and provides:

> A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation.

43 P.S. § 1424(a). Notably, "despite the use of the permissive 'may,' the Whistleblower Law's '180–day time limit is mandatory, and courts have no discretion to extend it.'" Campion v. Northeast Utilities, 598 F.Supp.2d 638, 645 (M.D. Pa. 2009) (quoting O'Rourke v. Pennsylvania Dep't of Corr., 730 A.2d 1039, 1042 (Pa. Commw. Ct. 1999)).

Plaintiff's termination occurred on November 1, 2012. Plaintiff filed her initial Complaint on October 22, 2013, and one year later, Plaintiff filed her First Amended Complaint

6

setting forth claims under MCARE's anti-retaliatory provisions. It would appear, regardless of the filing date used, that Plaintiff is well beyond the applicable 180 day statute of limitations from the accrual of her whistleblower claim.

Plaintiff argues in response that her claims are subject to a two year statute of limitations set forth in MCARE's Chapter 5, which states that its provisions "relate[] to medical professional liability." 40 P.S. §1303.501. MCARE defines a "medical professional liability claim" as "[a]ny claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided." 40 P.S. §1303.103. Thus the purpose of Chapter 5 is "to ensure fair legal process and reasonable compensation for persons injured due to medical negligence." 40 P.S. §§ 1303.501, 1303.502

With regard to injuries or death resulting from medical negligence, Section 1303.513 of the MCARE Act sets forth a "Statute of Repose," providing that no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract." 40 P.S. § 1303.513(a). In the case of death or survival actions "brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (related to survival action), the action must be commenced within two years after the death.…" 40 P.S. § 1303.513(d). A plain reading of these provisions establishes that Plaintiff's whistleblower claims for reporting incidents and/or serious events are not within the scope of "medical professional liability claim[s]" subject to these lengthier limitation periods.

Examination of the intent, structure and division of MCARE Chapters 3 and 5 makes clear that the only those individuals seeking recovery for personal injury are within the ambit of Chapter 5. It is equally clear that the Pennsylvania Legislature's expansion of the scope of the

7

Whistleblower Law in Chapter 3 provides a remedy for reporting health care workers but does not alter the requirements that a whistleblower claim be brought within the 180-day statutory limitations period. This interpretation gives meaning to the Whistleblower Law's specific inclusion of a 180-day statute of limitation for retaliation claims, and avoids the undue judicial expansion of remedies expressly provided through MCARE's incorporation of the Whistleblower Law. Accordingly, because it cannot be disputed that Plaintiff's Complaint and supplemental First Amended Complaint were not filed within 180 days of termination, dismissal of Counts VI – IX is required.

### 2. Protected Activity

Defendants have filed a Supplemental Brief contending that because Plaintiff's termination allegedly arose out of complaints or disagreements with her employer's policies or actions, she did not engage in "protected activity" necessary to sustain any of her claims for retaliatory discharge (ECF No. 48). This argument is readily disposed of because Defendants misstate the law and Plaintiff's claims.

First, Defendants cite Dunsmuir v. May Dept. Stores Co., 120 F. App'x. 927, 929 (3d Cir. 2005), for the general proposition that to sustain a claim for wrongful discharge, a Plaintiff must establish "(1) that [s]he engaged in protected activity; (2) that [s]he suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) that there is a causal connection between h[er] protected activity and the employer's adverse action."

Then, seizing upon the phrase "protected activity," Defendants import standards applicable to sustain a retaliatory discharge claim under the First Amendment into this case, without acknowledging the doctrinal and statutory differences between the claims asserted.

For their interpretation of the law, Defendants rely upon Garcetti v. Ceballos, 547 U.S. 410 (2006). In Garcetti, the United States Supreme Court ruled that the First Amendment does not protect a government employee from discipline based on speech made pursuant to an employee's official duties. Richard Ceballos, a calendar deputy for the district attorney's office in Los Angeles, was told by a defense attorney that an affidavit used to obtain a search warrant had been inaccurate. Id. at 413. Ceballos determined that the affidavit had indeed contained "serious misrepresentations." Id. at 414. Ceballos then prepared a memorandum that recommended dismissal of the case. Id. Ceballos claimed that he suffered retaliation for his actions.

The Supreme Court rejected Ceballos's First Amendment claim, ruling that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421.

Here, Plaintiff's claims do not arise under the First Amendment, but rather are brought pursuant to the express anti-retaliation provisions of the Pennsylvania Whistleblower Law, 43 P.S. § 1423 (a) and EMTALA, 42 U.S.C. §§ 1395dd(i). These provisions forbid the discharge of employees for making good faith reports regarding wrongdoing. In addition, Plaintiff states a common law wrongful discharge claim, which permits recovery where termination implicates a clear mandate of public policy. See Weaver v. Harpster, 975 A.2d 555 (Pa. 2009); Geary v. U.S. Steel Corp., 319 A.2d 174 (Pa. 1974). For example, at Count V of the Complaint, Plaintiff alleges that she spoke with two investigators from the Pennsylvania Department of Health regarding the treatment received by Patient L.S. Plaintiff further alleges that after being confronted by her supervisor about the contents of her discussion, Plaintiff was terminated. (ECF

No. 1 ¶¶ 107 – 112). To the extent the evidence in this case is developed and supports Plaintiff's claims, she is not precluded from recovery for retaliatory discharge merely because she reported incidents in the scope of her employment. As such, Defendants' Motion to Dismiss on this basis should be denied.

    **D.    CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the "Motion to Dismiss Counts VI Through IX of Plaintiff's Amended Complaint" (ECF No. 34) be granted in part and denied in part. In particular, it is recommended that Counts VI through IX of Plaintiff's Amended Complaint be dismissed. As to Plaintiff's remaining claims, Defendant's Motion to Dismiss predicated on the scope of the First Amendment should be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

    Respectfully submitted,

    /s/ Maureen P. Kelly
    MAUREEN P. KELLY
    CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: March 30, 2015

cc:    The Honorable Mark R. Hornak
    United States District Judge

    All counsel of record by Notice of Electronic Filing