IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE GILLISPIE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-1534 |
| | ) | |
| | ) | Judge Mark R. Hornak/ |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| REGIONALCARE HOSPITAL | ) | |
| PARTNERS, INC.; ESSENT | ) | |
| HEALTHCARE-WAYNESBURG LLC | ) | |
| *doing business as* SOUTHWEST | ) | |
| REGIONAL MEDICAL CENTER; | ) | |
| ESSENT | ) | Re: ECF No. 97 |
| HEALTHCARE-PENNSYLVANIA, INC.; | ) | |
| ESSENT HEALTHCARE INC.; ESSENT | ) | |
| HEALTHCARE; SOUTHWEST | ) | |
| REGIONAL MEDICAL CENTER, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

Presently before the Court is a Motion for Summary Judgment filed by Defendants RegionalCare Hospital Partners, Inc., Essent Healthcare-Waynesburg LLC *doing business as* Southwest Regional Medical Center, Essent Healthcare-Pennsylvania, Inc., Essent Healthcare Inc., Essent Healthcare and Southwest Regional Medical Center (collectively, "Defendants"). ECF No. 97.

For the following reasons, it is respectfully recommended that the Motion for Summary Judgment be granted.

## II.     REPORT

### A.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Marie Gillispie ("Plaintiff") began her employment with Defendants in August, 1999 as a licensed practical nurse at Southwest Regional Medical Center ("SWRMC"). In 2012, Plaintiff was employed by SWRMC in the position of Quality Project Coordinator. As the Quality Project Coordinator, Plaintiff was responsible for raising patient care issues and investigating medical errors and complaints. She reported to Pam Carroll, the Chief Quality Officer. Plaintiff's employment was terminated involuntarily on November 1, 2012. ECF No. 99 ¶¶ 5, 15-20; ECF No. 102 at 1.

Plaintiff initiated this civil action on October 22, 2013, with the filing of a five-count Complaint. ECF No. 1. In her original Complaint, Plaintiff set forth various claims against Defendants for her alleged retaliatory discharge on November 1, 2012, in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA")(Count I) and for her alleged wrongful termination in violation of various public policies (Counts II through V). Defendants filed a Motion to Dismiss Counts II through V pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that Plaintiff's common law wrongful discharge claims were preempted by applicable federal and state statutes, including the Pennsylvania Whistleblower Law, 43 P.S. § 1422 *et seq.,* and the Pennsylvania Medical Care Availability and Reduction of Error ("MCARE") Act, 40 P.S. § 1303.101 *et seq.* ECF No. 2. This Court denied the initial Motion to Dismiss, noting that EMTALA appears to contemplate the incorporation of state common law remedies into an EMTALA civil action, and discovery would be required to determine if Plaintiff's common law claims were duplicative of her statutory claims. As such,

the Motion to Dismiss was denied without prejudice to renew the arguments for dismissal at the summary judgment stage of this litigation. ECF Nos. 13, 16.

Subsequently, Plaintiff filed a Motion to Amend/Correct her Complaint, ECF No. 27, which was granted on October 15, 2014. ECF No. 28. Plaintiff filed her First Amended Complaint on October 31, 2014, which purported to add four claims (Counts VI through IX). ECF No. 32. Defendants subsequently filed a second Motion to Dismiss, seeking to dismiss each of the additional claims based upon Plaintiff's failure to timely file her MCARE Act claims. ECF No. 34. In addition, Defendants sought the dismissal of all retaliation claims on the basis that Plaintiff's claims arise out of complaints lodged within the scope of her employment, which Defendants argued could not constitute "protected activity." Id. On April 21, 2015, this Court granted the Motion to Dismiss in part, dismissing Counts VI through IX. ECF Nos. 50, 52. This Court denied the Motion to Dismiss insofar as it was predicated on the First Amendment. Id.

Following the completion of discovery, Defendants filed the instant Motion for Summary Judgment on November 13, 2015. ECF No. 97. Defendants also filed a Brief in Support of the Motion for Summary Judgment, a Concise Statement of Material Facts and an Appendix to the Motion. ECF Nos. 98-100. On December 3, 2015, Plaintiff filed a response to the Motion for Summary Judgment, a response to the Concise Statement of Material Facts and two Appendices. ECF Nos. 101-104. On December 7, 2015, Plaintiff filed a brief in opposition to the Motion for Summary Judgment. ECF No. 107. On December 16, 2015, Defendants filed a reply brief. ECF No. 110. The Motion for Summary Judgment is now ripe for review.

B.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991). When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. EEOC v. Allstate Ins., 778 F.3d 444, 448 (3d Cir. 2015).

In order to avoid summary judgment, a party must produce evidence to show the existence of every element essential to the case that it bears the burden of proving at trial; "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the nonmoving party fails to make a sufficient showing on any essential element of its case, the moving party is entitled to judgment as a matter of law. Id.

C.     DISCUSSION

1.     **Count I: Unlawful Firing in Violation of EMTALA**

In Count I of the Amended Complaint, Plaintiff alleges that her termination from employment at SWRMC was an unlawful retaliatory firing in violation of EMTALA;

4

specifically, Plaintiff alleges a violation of 42 U.S.C. § 1395dd(i). ECF No. 32 at 4. The cited statute provides, in pertinent part, as follows:

> (i) Whistleblower protections. A participating hospital may not penalize or take adverse action . . . against any hospital employee because the employee reports a violation of a requirement of this section.

Defendants assert that Count I fails as a matter of law because Plaintiff has failed to set forth evidence of: (1) a patient-related EMTALA violation or (2) Plaintiff's protest of Defendants' decision concerning EMTALA.[1]

### a. Patient-related EMTALA violation

EMTALA prohibits, *inter alia*, the transfer of individuals who have not been stabilized unless certain conditions are met. 42 U.S.C. § 1395dd(c). Plaintiff, in the Amended Complaint, alleges that the initial violation of EMTALA occurred when a pregnant female ("E.R.") presented to the SWRMC Emergency Room Department and was referred to Uniontown Hospital for treatment without: (1) contacting a physician and Uniontown Hospital to accept E.R.; (2) contacting and giving a verbal report to a nurse at Uniontown Hospital; and (3) arranging transportation to Uniontown Hospital for E.R.[2] ECF No. 32 ¶¶ 17-21. Implicit in Plaintiff's allegations is the fact that E.R. was not stable when she was referred to Uniontown Hospital.

Defendants do not assert that they met EMTALA's conditions for transfer of an unstable patient; rather, Defendants assert that E.R. was in stable condition prior to her discharge. See, e.g., ECF No. 99 ¶¶ 27, 29.

---

[1] Defendants also assert that even if Plaintiff has established a *prima facie* case, her claim nonetheless fails because she has failed to establish that Defendants' reason for terminating her was pretextual. It is unnecessary to address this assertion; however, because Plaintiff has failed to establish a *prima facie* case.

[2] Plaintiff does not specifically identify the subsections of EMTALA that correspond to these alleged violations, nor are the same obvious from a reading of EMTALA. In particular, the nurse-to-nurse report repeatedly referred to by Plaintiff is not a requirement in 42 U.S.C. § 1395dd(c)(2) (setting forth requirements for an appropriate patient transfer).

It appears that there is a genuine dispute as to E.R.'s condition upon her departure from SWRMC. Defendants cite, *inter alia*, to a medical record in which E.R.'s condition is described as stable. ECF No. 99 ¶ 27 (citing ECF No. 100-4 at 10). However, the same medical record indicates that E.R. "needed" to be seen by a gynecologist and that she was offered an ambulance transport to Uniontown Hospital to do so. ECF No. 100-4 at 10. It is further indicated therein that SWRMC personnel made two attempts to contact the Uniontown Hospital Emergency Room. Id. Additionally, Plaintiff points to the "Patient Visit Information" document in which, under "Activity Restrictions or Additional Instructions," E.R. is directed to "Go directly to Uniontown Hospital." ECF No. 102 ¶ 25 (citing ECF No. 103 at 7). The latter indications raise a question as to the E.R.'s stability at the time she left SWRMC.[3] Therefore, summary judgment is not appropriate on this basis.

### b. Plaintiff's protest of EMTALA decision

Defendants also argue that Plaintiff's claim must fail where there is no evidence that Plaintiff protested Defendants' EMTALA-related decision. Although Defendants' terminology is imprecise, it is clear from the statute under which Plaintiff seeks relief that she must have been terminated for "report[ing] a violation of a requirement" of EMTALA in order to obtain relief. 42 U.S.C. § 1395dd(i). Plaintiff claims that she "reported" the EMTALA violation to Cindy Cowie, her supervisor. ECF No. 102 ¶ 53 (citing ECF No. 103 at 50-63; ECF No. 104).

As discussed in O'Connor v. Jordan Hospital, 2013 WL 3105647, *5 (D. Mass. 2013):

> Where the term "report" is not defined within EMTALA it is appropriate to turn to its ordinary meaning. See Schindler Elevator Corp. v. U.S. ex. Rel. Kirk, ––– U.S. ––––, ––––, 131 S.Ct. 1885, 1891, 179 L.Ed.2d 825 (2011); accord U.S. ex. rel. Conrad v. Abbott Laboratories, Inc., 2013 WL 682740, *5 (D.Mass. Feb.25, 2013). "A 'report' is 'something that gives

---

[3] It is noted that Defendants also point to documents concerning third-party investigations which Defendants claim exonerate them of any wrongdoing. ECF No. 98 at 5 (citing ECF No. 99 ¶¶ 151, 154). As provided, the cited documents are incomplete and unclear in scope and conclusion.

information' or a 'notification' ... or 'an official or formal statement of facts or proceedings.' " Schindler Elevator Corp. v. U.S. ex. Rel. Kirk, 131 S.Ct. at 1891 (quoting Webster's Third International Dictionary, p.1925 (1986) and Black's Law Dictionary, p. 1300 (1990)).

In O'Connor, the plaintiff received a call from another hospital regarding a possible EMTALA violation at the hospital at which she worked. O'Connor, 2013 WL 3105647 at * 8. The plaintiff "took the lead in the investigation" of the incident, brought the EMTALA violation to the attention of senior management and prepared a reporting letter to be sent to a regulatory authority. Id. Based on these facts, the O'Connor court found that the plaintiff had "reported" the violation. Id.

Here, in response to Defendants' argument on this point, Plaintiff advances the following evidence: (1) Plaintiff's deposition testimony concerning her statements at a meeting; and (2) a letter that Plaintiff submitted to Ms. Cowie immediately prior to Plaintiff's termination describing her statements at said meeting. ECF No. 107 at 9.

The referenced meeting was the second in a series of two meetings convened at the direction of Ms. Cowie for the purpose of investigating whether an EMTALA violation occurred in the care of E.R. ECF No. 103 at 50-56. At the referenced meeting, it was decided that an EMTALA violation would not be reported. Id. at 56. Plaintiff states that she "did say, I think it's better to be on the side of safety and report it because they're gonna find out anyway . . .." Id. She explains, "I protested with [Ms. Cowie] several times, or protested with the group several times that, you know, we probably better, you know, we better let them know because it would come out." Id. at 57.

Plaintiff neither discovered an EMTALA violation nor reported an EMTALA violation to any regulatory authority. Even when viewed in the light most favorable to Plaintiff, the evidence she has produced reveals that her sole act was to voice her equivocal opinion in a meeting

7

convened by others for the purpose of investigating the possibility of an EMTALA violation. Unlike the plaintiff in O'Connor, Plaintiff undertook no initiating, resolute or official action to report an EMTALA violation. Accordingly, Plaintiff has failed to establish a *prima facie* case on her related claim. Defendants are thus entitled to judgment as a matter of law on Count I.

### 2. Counts II-V: Violations of Public Policy Exception to Pennsylvania's At-Will Employment Doctrine

In Counts II through V of the Amended Complaint, Plaintiff alleges that her termination from employment at SWRMC was in violation of the public policy exception to Pennsylvania's at-will employment doctrine.

Defendants assert that Counts II through V fail as a matter of law because they are essentially MCARE-based claims for which a statutory remedy exists. As explained in this Court's Report and Recommendation concerning the Motion to Dismiss Counts II through V:

> Defendants argue that [Plaintiff's] claims are preempted by an existing statutory remedy provided by the Pennsylvania Medical Care Availability and Reduction of Error ("MCARE") Act, 40 P.S. § 1303.101 et seq., which expressly incorporates the provisions of the Pennsylvania Whistleblower Law.
>
> The MCARE Act protects health care professionals from retaliatory action for reporting "incidents" or "serious events" to the appropriate safety officer. It provides in pertinent part:
>
>> A health care worker who reasonably believes that a serious event or incident has occurred shall report the serious event or incident according to the patient safety plan of the medical facility.... The report shall be made immediately or as soon thereafter as reasonably practicable, but in no event later than 24 hours after the occurrence or discovery of a serious event or incident.... A health care worker who reports the occurrence of a serious event or incident in accordance with subsection (a) or (b) shall not be subject to any retaliatory action for reporting the serious event or incident and shall have the protections and remedies set forth in ... the Whistleblower Law.

8

> 40 P.S. § 1303.308. An "incident" is defined as "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility which could have injured the patient but did not either cause an unanticipated injury or require the delivery of additional health care services to the patient." Id. at § 1303.302. A "serious event" is defined as "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility that results in death or compromises patient safety and results in an unanticipated injury requiring the delivery of additional health care services to the patient." Id.
>
> . . .
>
> The Court agrees that to the extent [Plaintiff] sets forth claims that fall within the anti-retaliation provision of the MCARE Act, her common law wrongful discharge claims are preempted.

ECF No. 13 at 12, 13.

The above-quoted Report and Recommendation was adopted as the Opinion of this Court, as supplemented by, *inter alia*, the following:

> The Defendants are quite right that Pennsylvania common law wrongful discharge case law makes it plain that where there is a statutory remedy, particularly where there is a comprehensive remedial scheme made part of the statutory remedy, state common law will not recognize an action for "wrongful discharge." *See Murray v. Commercial Union Ins. Co. (Commercial)*, 782 F. 2d 432, 437 (3d Cir. 1986). This is not so much an application of more "supreme" federal law via the preemption doctrine as it is a principle of substantive Pennsylvania state law. The thought behind this is the idea that where the legislature has spoken clearly, and outlined the parameters of a right of action and the "rules of the road" for a potential recovery, the common law has no remedial "gap" to fill in, and all claims must come through that statutory sieve. *See Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 920-22 (Pa. 1989).
>
> . . .
>
> The Magistrate Judge directly and correctly stated that the claims asserted . . . cannot survive to the extent that they are coterminous with M-CARE-based claims.

ECF No. 16 at 2.

9

The above-quoted decisions held in abeyance the question of whether Plaintiff's claims were coterminous with MCARE-based claims. It is now ripe for review.

      **a.**      **Count II**

           **(1)**      **Qualification under MCARE Act**

Count II of the Amended Complaint has the same factual basis as Count I. ECF No. 32 at 7-9. Plaintiff denies that this claim could qualify as a claim under the anti-retaliation provision of the MCARE Act on the basis that E.R.'s situation was neither an "incident" nor a "serious event" as defined in the MCARE Act. ECF No. 107 at 13. Defendants assert that the situation constituted an "incident." ECF No. 98 at 13. The narrow question before the Court is whether Plaintiff has produced evidence to show E.R.'s situation was something other than "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility which could have injured the patient but did not either cause an unanticipated injury or require the delivery of additional health care services to the patient." 40 P.S. § 1303.302.

Plaintiff baldly asserts that E.R.'s care at SWRMC did not constitute an "incident" because "the situation **did** require the delivery of additional health care services to patient E.R." ECF No. 107 at 13 (emphasis in original). Plaintiff does not cite to any evidence to support her assertion and a review of the Amended Complaint, Defendants' Concise Statement of Material Facts and Plaintiff's Response to Defendant's Concise Statement of Undisputed Material Facts fails to reveal any evidence that E.R. required additional health care services caused by an event, occurrence or situation involving her care at SWRMC. Accordingly, Plaintiff has not made a sufficient showing that her claim at Count II is not coterminous with an MCARE-based claim.

### (2) Adequate remedy under Whistleblower Law

Plaintiff also asserts that she should be permitted to pursue her claim under common law because the Whistleblower Law provides limited remedies. ECF No. 107 at 14. This argument was already decided by this Court:

> [T]o the extent the full panoply of remedies available at common law may not be available under the provisions of the Whistleblower Law, it is apparent that the Pennsylvania legislature has deemed the remedies available to be sufficient and it is not for this Court to say otherwise.

ECF No. 13 at 13 (citation and quotation marks omitted) (adopted by ECF No. 16). Therefore, Plaintiff cannot obtain relief on this argument.

Accordingly, Defendants are entitled to judgment as a matter of law on Count II.

### b. Counts III and IV

#### (1) Adequate remedy under Whistleblower Law

Count III of the Amended Complaint concerns a patient with the initials G.M. ECF No. 32 at 9-12. Count IV of the Amended Complaint concerns a patient with the initials M.E. Id. at 13-16. Plaintiff's sole argument to defend against Defendants' Motion for Summary Judgment on these counts is the inadequate-remedy one discussed above. The argument was previously rejected by this Court. ECF No. 13 at 13; ECF No. 16. Accordingly, Defendants are entitled to judgment as a matter of law on Counts III and IV.

### c. Count V

#### (1) Qualification under MCARE Act

Count V concerns the treatment of a patient with the initials L.S. ECF No. 32 at 16-19. Plaintiff denies that this claim could qualify as a claim under the anti-retaliation provision of the MCARE Act on the sole basis that L.S.'s situation was neither an "incident" nor a "serious event" as defined in the MCARE Act. ECF No. 107 at 13-14. Defendants assert that the claim

constitutes an "incident." ECF No. 98 at 16. The narrow question before the Court is whether Plaintiff has produced evidence to show L.S.'s situation was something other than "[a]n event, occurrence or situation involving the clinical care of a patient in a medical facility which could have injured the patient but did not either cause an unanticipated injury or require the delivery of additional health care services to the patient." 40 P.S. § 1303.302.

Plaintiff asserts that L.S.'s care at SWRMC did not constitute an "incident" because it "could not have caused him injury." ECF No. 107 at 14. She cites no evidence to support her assertion. The issues with L.S.'s care are summarized in the following agreed-upon fact:

> Ms. Cowie spoke with L.S.'s family, who informed Ms. Cowie that L.S. was given all of his medications at once, despite having a stricture,[4] which made it difficult for him to take all of his medications at once. They also informed her that there had been two evenings during which L.S. did not receive his eye drops.

ECF No. 99 ¶ 95 (citations omitted).

As stated above, Plaintiff has not made any evidentiary showing that the deficits in L.S.'s care could not have injured him or required the delivery of additional health care services to him. Without such a showing, this Court has little difficulty finding that a hospital patient receiving medication in an manner ill-suited for his physiology as well as failing to receive required medication as needed could have resulted in an injury to him and/or required that he receive additional health care services. Accordingly, Plaintiff has not made a sufficient showing that her claim at Count V is not coterminous with an MCARE-based claim.

### (2) Adequate remedy under Whistleblower Law

Plaintiff also raises the inadequate-remedy argument as to this claim. The argument was previously rejected by this Court. ECF No. 13 at 13; ECF No. 16.

---

[4] The medical definition of "stricture" is "an abnormal narrowing of a bodily passage (as from inflammation, cancer, or the formation of scar tissue) <esophageal *stricture*>; *also*: the narrowed part." http://www.merriam-webster.com/medical/stricture.

Accordingly, Defendants are entitled to judgment as a matter of law on Count V.

## D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment, ECF No. 97, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: February 23, 2016

cc: The Honorable Mark R. Hornak
United States District Judge

All Counsel of Record Via CM-ECF